Morning is 2 0 10 dash 1 0 2 1 in Re Thorpe That's fine Is that Mr. Tenza? Yes, Mr. Tenza. You can proceed. Thank you, Your Honor. Good morning, Your Honors. My name is Walter Tenza, and I represent the appellant, Darla Thorpe, in this matter. This case involves obviousness rejections based on, on the one hand, a primary reference for highlighting tape, and on the other hand, secondary references for radio-opaque x-ray materials and band-aids. And the question is, how does one go from highlighting tape to x-ray, radio-opaque materials and band-aids? And the answer is, you don't. You don't unless you're using my client's patent application as a template in order to pick pieces of unrelated arts patents. And you also don't when the disclosure of the primary references only refers to a singular tape. And it says that the tape, it, is made up into reels in a manner analogous to normal adhesive tape. So the primary reference indicates that we should stay within the norm. And the norm is not radio-opaque materials. I'm a little unclear on that argument, because I think what the board was saying, so you can correct me if I'm wrong, is it pointed to Sala's explicit reference there to adhesive tape, which gives you the link, if you need, assuming you need one, to take you into the other reference, which is Goldstein and DeSena or whatever, because those dealt with dispensers for real adhesive tape. So that was the link. What's the problem with that? I think the quote actually says, normal adhesive tape. And I think in the context of the primary reference, normal adhesive tape means a highlighting tape, which is more of a light adhesive. I think a lot of different materials use adhesives. Furniture uses adhesives. Construction materials use adhesives. And so did DeSena and Goldstein, right? That's correct. And there are many different types of references which use adhesives. And I think it's unreasonable to think that one skilled in the art is going to go into many different areas and search out many different areas involving many adhesives. And I think it's also instructive that the DeSena reference was not picked up until the second final rejection in this matter. So the examiner had to do an arguably more expanded search in order to find this other unrelated patent. So again, radiopaque materials, which have metallic elements like aluminum, lead, barium sulfate, these are not related to light adhesives, which are like post-it notes. And I think some of the patents that were disclosed here, including Fusselman and Voorhees, which were directed towards highlighting tape, say that the adhesive is like a post-it note. So we're not talking about lead. We're not talking about aluminum. We're not talking about barium sulfate. And it doesn't make sense to combine those types of patents, those types of references, with highlighter tape, which is a light adhesive. And also, we pointed out the norm in this case is either no container, which is what Sala discloses, or the norm in this case is one tape, one compartment, one slot, one cutting edge. And this is what the general highlighting tape patents point out. And by pointing out that the norm is one, we are not attacking the references individually. We are pointing out that in that area, the norm is one. And the only way that the board and the examiner could reject my client's application was to go outside the norm, to reach out to unrelated patents, and that's how they were able to reject her application. I guess I'm a little confused of the standard of what the norm is. I mean, because it's outside the norm, is that equivalent to it being non-obvious? I think in this case it is. I think in each case regarding obviousness, you have to read the entire references, particularly the references in the area in this case of highlighting tape. And what they suggest to you is that you don't need to do something special. And they suggest to you that, and somebody skilled in the art reading these would say, well, I don't even need a container, or if I need a container, I just do it the way Fusselman or Voorhees suggests, with one compartment, one slot, one type of tape. And why am I even going out and looking at radiopaque materials involving x-rays and band-aids that have gauze sections that you can't see through, that have special types of adhesive for adhering to the skin, hypoallergenic adhesives. So adhesives is a very broad category. Adhesives on strips is a very broad category. And for a person skilled in the art to be aware of everything involving adhesives and to take that all into account and to combine it is an unreasonable requirement. So is that the nub of your argument? I mean, it's just whether or not they went to a field that they shouldn't have gone to. I think the major argument is whether those should have been combined together. And I think the other part of the argument is also that those other references did not refer in the specific embodiments to them being different colors. But I think the major part of the argument is that these very different fields should not be combined in this instance, where the specific references do not indicate that you have to go outside the norm. So if somebody comes along next year and files an application for a patent with three slots rather than two? I think the patent claims probably say two or more. But I think there are many patents that have claims for two or more when something else had one. So it's not a prohibition where somebody comes up with something that does something with two or more versus somebody did something with one. I don't think that's automatically an obviousness situation, particularly when the specific references indicate one or do something for normal adhesive tape. And normal in this case is just something light for a Post-it note, not something with lead or barium sulfite or aluminum or gauze strips or whatever it might be. But the sense of patent, though, was only cited not for the adhesives or otherwise, but for multiple rows. I believe that's correct, but again, we don't believe that it should be combined at all. And it shows in their embodiments, it shows multiple sizes, which again, the Sala reference doesn't even have multiple sizes. Who knows if you even need multiple sizes for highlighting tape? But who would even bring in that reference at all? Who would even look at that reference when it's directed to radiopaque materials? Both of those references for the radiopaque materials and Band-Aids are not references which say we have rolled dispensers. Oh, and by the way, we can dispense Band-Aids. They're references which say we are inventing something for Band-Aids. We are inventing something for radiopaque materials. So reading those references, it's not like you're looking at something and they're saying, oh, look, these are dispensers, let's put it in here. They're inventing something for a specific purpose, and that's the way they describe it in those patents. And that's also relevant to what the entire references teach. So is your argument that the patent office would be limited to one particular class of references? No, I don't think necessarily one class of references, but I think a natural area of reference. Many times the patent office comes back with restriction requirements, and now they're getting more aggressive with that. And they'll split up patent claims into five different species, and they'll say these five species are patently distinct because they require too much of a burden for searching. Now, since the patent office is able to do that and put that burden on the applicants to split up their applications to pay more fees, they should also, in an obviousness context, not say, OK, we can search out everything on an obviousness context, but not search out everything when we're looking at a restriction context. So I think that's also interesting to note. You think that that divisional aspect then is to search for more fees rather than trying to— Well, Your Honor, I don't really want to comment on that, but I think there's a question of saying something's patently distinct for one purpose, and then saying it's not patently distinct for another purpose. I mean, I could see in a restriction context that they would easily say these are aluminum patents, these are radio-opaque material patents, or this is a claim for that, it's not relevant to this thing that you're doing for highlighting tape. Now, in an obviousness context, it should be the same. But that also mitigates against your argument, though, isn't it? Because if they recognize a differentiation of a particular tape, then they can go into those classes to do the search to determine whether or not it would be a particular reference applicable to the tapes that you're talking about. Well, I think that what we're not recognizing is, in any appeal, the court has before it a handful of references. But in reality, in practice, we don't have a handful of references. We have thousands of references. And in adhesives, there are thousands of references on adhesives. This is a little bit off the point, but there was this television program on modern marvels. They did something on adhesives, and they showed a room with electronics and furnitures and carpet and everything you could imagine. And what they said was, here's this room with adhesives. Here's this room without adhesives. Everything in the room came apart. And the reason is, things that you would not imagine that have adhesives have adhesives. So to say that we're going to look at every single patent that has adhesives, any type of stripped adhesive or any type of rolled material with adhesives, whatever it is, is unreasonable. How does the issue of common sense and KSR come into play here? Well, I think common sense, as you're saying, can be used as a factor, but it's not the sole factor. And I think we have to be careful not to immediately judge somebody's invention without looking exactly at what the references teach. There's always an obligation to read the references as a whole and see whether they diverge away from whatever it is. And common sense can also be used as a factor. But we can't immediately judge an individual's invention and say, you know, this is obvious. I just think this is obvious now in hindsight. I think we have to read the references, and that's a legal requirement, to see what they teach and to see if they diverge away from whatever it might be. Spencer, you're into your rebuttal time. Do you want to save it? I'd like to save it. Thank you very much. Mr. Wood? May it please the court? I think the board's emphasis was not so much on the fact that these references referred to adhesives, it's that they all referred to rolled materials or rolled tape materials. I don't think adhesive or the use of adhesives played any significant role in the board's analysis. So that's how they got from the primary reference to the others? Exactly. SALA teaches a rolled highlighting tape, rolled as normal adhesive tape. It also teaches the desirability of having more than one color available at any given time. As SALA says, color can be used for aesthetic significance, which requires more than one color. De Sena and Goldstein teach a convenient way of having more than one rolled tape available at any given time. Again, the tie-in is the fact that SALA is analogous to adhesive tape, and De Sena and Goldstein teach containers for dispensing rolled materials. And those references, De Sena and Goldstein in particular, does not state that the container is necessarily specific to that particular medical device. And what the medical device is, is it's a strip of adhesive tape with a very thin layer of radio-opaque material painted or sprayed onto it, so it's flexible enough to roll up. And De Sena says particularly, in reference to Figure 3B, which is reproduced in the Red Reef, as illustrated in Figure 3B, a plurality of dispensers is arrayed to offer a podiatrist a variety of marking shapes and sizes. So that is, in a sense, motivation from De Sena, or teaching that this is a great way to make available to the user a variety of different kinds of tapes. How broad can the patent office search field be? Here we have an adhesive tape dispenser, different colors, multi-colors, two or three slots, and a patent office has had to go into the medical field and other areas of searches for references. How broad does that field extend as far as the patent office is concerned? Can it search everywhere and under any tree and under any rock? There are limits, Your Honor. That is correct. And the typical rules that are applied are referred to as the field of endeavor, search within the field of endeavor, or beyond the same field of endeavor as the invention, solutions that are reasonably pertinent to solving the problem that the invention solves. I think you could look at, in this case, that both of those tests are satisfied. Sala, the field of the invention, is as much highlighting tape as it is tape dispensers. And as is the invention, it's as much the dispenser as it is the highlighting tape, which was known. Highlighting tape was known prior to this invention. And so one of the fields of endeavors that all of the references tie in with the invention is dispensers for tape, rolled materials. And then beyond that, to the extent that Sala suggests the need for a convenient way to dispense multiple rolls of a variety of tape. Would the standard of a person of ordinary skill in the art come into play at all as to where a person of ordinary skill in the art would search for a particular resolution of a problem? Yes, Your Honor. That's exactly right. It always comes into a play in any obviousness determination. So a field of endeavor would be limited by the art that the person of ordinary skill has their skill in. So that would be a restriction. I would agree with that, Your Honor. Who is a person of ordinary skill in the art in this context? Well, neither party really explicitly set forth a definition of that. I would suggest here, since it wasn't really briefed, someone who is skilled in production or design of office supplies. So adhesive tape, highlighter tape, highlighters, the need for different colors, the need for mechanical ways of conveniently dispensing tape. I think that's a fairly broad category that arguably is the appropriate art or field at issue here. And I would add, Your Honors, that to the extent that my understanding is that the argument that is being made is that the references are not analogous to the invention. And that argument was not really made before the reply brief. The term non-analogous was not used in the opening brief and not until the reply brief. So I would submit that that argument has been waived. And unless there are further questions, I'll cede the rest of my time. Thank you, Mr. Wood. Thank you. Senator, you have four minutes left. Yes, Your Honor. We always made the argument that these were unrelated medical arts patents. We may not have said non-analogous specifically, but we always made the argument that they were unrelated patents. Thank you, Your Honor. Thank you. Case is moved.